IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

*In re:*                                                      CASE NO. 3:19-BK-04421-JAF
                                                              CHAPTER 7

JACOB CARL WILSON,

        Debtors.

_____/

## **MOTION FOR RELIEF FROM AUTOMATIC STAY**

## **NOTICE OF OPPORTUNITY TO OBJECT AND REQUEST FOR HEARING**

**Pursuant to Local Rule 2002-4, the Court will consider the relief requested in this paper without further notice or hearing unless a party in interest files a response within <u>21</u> days from the date set forth on the attached proof of service, plus an additional three days for service if any party was served by U.S. Mail. You should read these papers carefully and discuss them with your attorney if you have one. If the paper is an objection to your claim in this bankruptcy case, your claim may be reduced, modified, or eliminated.**

**If you object to the relief requested in this paper, you must file a response with the Clerk of the Court at <u>300 North Hogan Street, Suite 3-150, Jacksonville, FL 32202</u> and serve a copy on the movant's attorney, Howard Law Group, 4755 Technology Way, Suite 104, Boca Raton, FL 33431, and any other appropriate persons within the time allowed. If you file and serve a response within the time permitted, the Court will either schedule and notify you of a hearing or consider the response and grant or deny the relief requested without a hearing.**

**If you do not file a response within the time permitted, the Court will consider that you do not oppose the relief requested in the paper, will proceed to consider the paper without further notice or hearing, and may grant the relief requested.**

U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE IGLOO SERIES III TRUST ("Movant") hereby moves this Court, pursuant to 11 U.S.C. § 362, for relief from the automatic stay with respect to certain real property of the Debtor(s) having an address of 2533 Spring Pond Lane, Jacksonville, FL 32221 (the "Property"). The facts and circumstances supporting this Motion are set forth in the Affidavit in Support of Motion for Relief from Automatic Stay attached hereto as Exhibit E (the "Affidavit"). In further support of this Motion, Movant respectfully states:

1.      A petition under Chapter 7 of the United States Bankruptcy Code was filed with respect to the Debtor(s) on November 19, 2019.

2.      The Debtor(s) has/have executed and delivered or is/are otherwise obligated with respect to that certain promissory note in the original principal amount of $161,269.00 (the "Note"). A true and correct copy of the Note is attached hereto as Exhibit A. Movant is an entity entitled to enforce the Note.

3.      Pursuant to that certain Mortgage (the "Mortgage"), all obligations (collectively, the "Obligations") of the Debtor(s) under and with respect to the Note and the Mortgage are secured by the Property.  A true and correct copy of the Mortgage is attached hereto as Exhibit B.

4.      All rights and remedies under the Mortgage have been assigned to the Movant pursuant to that certain assignment of mortgage, a true and correct copy of which is attached hereto as Composite Exhibit C.

5.      The legal description of the Property is

LOT 120, FOX HILL FARMS - UNIT ONE, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN PLAT BOOK 61, PAGES 28 THROUGH 36, INCLUSIVE, OF THE PUBLIC RECORDS OF DUVAL COUNTY, FLORIDA

6.      As of the petition date, the outstanding unpaid principal balance under the Note was 123,750.19, and the Debtor has defaulted under the terms of the Note and Mortgage by failing to make the payment due on February, 1, 2017.

7.      In addition to the other amounts due to Movant reflected in this Motion, as of the date hereof, in connection with seeking the relief requested in this Motion, Movant has also incurred $950.00 in legal fees and $181.00 in costs.

8.      The estimated market value of the Property is $153,413.00. The basis for such valuation is Brevard County Property Appraiser.  A copy of the valuation is attached hereto as Exhibit D.

9.      Upon information and belief, the aggregate amount of encumbrances on the Property listed in the Schedules or otherwise known, including but not limited to the encumbrances granted to Movant, is $192,202.10.

10.     Secured Creditor requests that all communications sent by Secured Creditor in connection with proceeding against the property including, but not limited to, notices required by state law and communications to offer and provide information with regard to a potential Forbearance Agreement, Loan Modification, Refinance Agreement, Loss Mitigation Agreement, or other Loan Workout, may be sent directly to Debtor.

11.     Cause exists for relief from the automatic stay for the following reasons:

(a)      Movant`s interest in the Property is not adequately protected.

(b)      Pursuant to 11 U.S.C. § 362(d)(2)(A), Debtor(s) has/have no equity in the Property.

12.     Pursuant to 11 U.S.C. § 362(e), Movant requests that in the event a hearing is necessary, said hearing be held within thirty (30) days.

        WHEREFORE, Movant prays that this Court issue an Order terminating or modifying the stay and granting the following:

1.      Relief from the stay allowing Movant (and any successors or assigns) to proceed under applicable non-bankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

2.      That the Order be binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of Title 11 of the United States Code.

3.      That the 14-day stay pursuant to FRBP 4001 be waived.

4.      For such other relief as the Court deems proper.

                                Respectfully submitted,
                                HOWARD LAW GROUP

                                 /s/ Matthew Klein
                                MATTHEW KLEIN
                                 FLORIDA BAR#: 73529
                                 4755  Technology Way, Suite 104
                                Boca Raton, FL 33431
                                Telephone: 954-893-7874
                                Fax: 888-235-0017
                                Email: matthew@howardlawfl.com

**I HEREBY CERTIFY** that on <u>December 13, 2019</u>, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF System, which will send a notice of electronic filing to all CM/ECF participants:

Donald M. DuFresne, Esq., 8777 San Jose Blvd., Ste. 301, Jacksonville, FL 32217

Douglas W. Neway, Trustee, PO Box 4308, Jacksonville, FL 32201

Office of the US Trustee, 400 West Washington Street, Suite 1100, Orlando, FL 32801

And a true and correct copy will be mailed to the non-CM/ECF participant:

Jacob Carl Wilson, 2533 Spring Pond Lane, Jacksonville, FL 32221


<u>/s/ Matthew Klein</u>
MATTHEW B KLEIN
FLORIDA BAR#: 73529

# EXHIBIT A

## NOTE

August 18, 2006      Jacksonville      .    FL

      *[Date]*            *[City]*           *[State]*

2533 Spring Pond Lane, Jacksonville, FL 32221
*[Property Address]*

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 161,269.00      (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is

GMAC Mortgage Corporation      .

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of     9.250    %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

### 3. PAYMENTS

#### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the First    day of each month beginning on October 1     , 2006    . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on September 1, 2036    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. Box 780, Waterloo, IA 50702-0780, ATTN: Payment Processing            or at a different place if required by the Note Holder.

#### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 1,326.72    .

### 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

### 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

### 6. BORROWER'S FAILURE TO PAY AS REQUIRED

#### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of   15    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000    % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

#### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

#### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

#### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note, is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

## 11. DOCUMENTARY TAX

The state documentary tax due on this Note has been paid on the mortgage securing this indebtedness. See Timely Payment Rewards Addendum attached hereto and made a part hereof.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

PAY TO THE ORDER OF

WITHOUT RECOURSE
GMAC MORTGAGE CORPORATION

*K. Doherty*
K. Doherty
Limited Signing Officer

*Jacob C Wilson* _____ (Seal)
Jacob C Wilson                                    -Borrower

*Celita I. Wilson* _____ (Seal)
Celita I Wilson                                    -Borrower

_____ (Seal)
                                    -Borrower

_____ (Seal)
                                    -Borrower

*[Sign Original Only]*

FLORIDA FIXED RATE NOTE -- Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   Form 3210  1/01
GMACM - CNS.1065.FLFIX (0009) (Page 2 of 2)

# TIMELY PAYMENT REWARDS ADDENDUM TO NOTE

THIS TIMELY PAYMENT REWARDS ADDENDUM TO NOTE is made this          18th          day of
August, 2006                        , and is incorporated into and shall be deemed to amend and supplement the
Note made and supplement the Note made by the undersigned ("Borrower"), in favor of
                                GMAC Mortgage Corporation
("Lender") and dated the same date as this Addendum (the "Note"). The Note is secured by a security instrument,
as modified or amended, in favor of Lender dated the          18th          day of August, 2006                .
(the "Security Instrument").

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Note, Borrower and
Lender further covenant and agree as follows:

1.    **TIMELY PAYMENT REWARDS RATE REDUCTION**
      Borrower has agreed to pay the rate of interest set forth in Section 2 of the Note (the "Note
      Rate") until the full amount of principal has been paid. However, if on any one of the second,
      third, or fourth anniversaries of the scheduled due date of the first full installment payment due
      under the Note (each, an "Anniversary Date") Borrower has demonstrated a Good Payment
      History, Lender agrees to decrease the Note Rate by    One
      percentage point (  1.000        %). Borrower will be deemed to have demonstrated a "Good
      Payment History" if Borrower: (a) has made each of the most recent 24 consecutive monthly
      payments under the Note and Security Instrument before the date the next payment was due; and
      (b) has never been late by 3 months or more in making any monthly payments due under the
      Note. If Borrower demonstrates a Good Payment History, the new Note Rate will take effect on
      the earliest Anniversary Date on which Borrower has demonstrated a Good Payment History
      ("Rate Reduction Date"). Beginning with Borrower's first monthly payment after the Rate
      Reduction Date, Borrower will pay the new amount as the monthly payment until the Maturity
      Date. Lender will decrease Borrower's Note Rate only one time during the term of the loan,
      provided Borrower demonstrates a Good Payment History on any one of the second, third, or
      fourth Anniversary Dates.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Timely
Payment Rewards Addendum to Note.

_____ (Seal)
Jacob C Wilson                                    -Borrower

PAY TO THE ORDER OF

WITHOUT RECOURSE
GMAC MORTGAGE CORPORATION

_____ (Seal)
Celita I Wilson                                   -Borrower

K Doherty
Limited Signing Officer

_____ (Seal)
                                                  -Borrower

_____ (Seal)
                                                  -Borrower

LOAN NO:  ████████
MULTISTATE TIMELY PAYMENT REWARDS ADDENDUM TO NOTE -
Single Family - Fannie Mae Uniform Instrument  Form 1410 4/01
GMACM - CTM.1401 (TPR) (0208)      358075838

# EXHIBIT B

Prepared By:
Barbara Schuman
4890 W. Kennedy Blvd
Tampa, FL 33609
for: GMAC Mortgage Corp.

After Recording Return To:

GMAC Mortgage Corp.
100 Witmer Road
Horsham, PA 19044-0963
ATTN: Records Management

_____ [Space Above This Line For Recording Data] _____

Loan N
MIN

## MORTGAGE

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A)    "Security Instrument" means this document, which is dated August 18,
2006          , together with all Riders to this document.
(B)    "Borrower" is
Jacob C. Wilson and Celita I. Wilson

Borrower is the mortgagor under this Security Instrument.  Borrower's address is

2533 Spring Pond Lane, Jacksonville, FL  32221

(C)    "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

FLORIDA -- Single Family -- Fannie Mae/Freddie Mac
UNIFORM INSTRUMENT Form 3010 1/01
*(Page 1 of 18)* 350875842    Initials: _____    941
GMACM - CMS.0008.FL (0001)

(D)    "Lender" is
GMAC Mortgage Corporation

Lender is a  Corporation                                 organized and existing under the
laws of Pennsylvania                                          . Lender's address is
100 Witmer Road, P.O. Box 963, Horsham, PA  19044

(E)    "Note" means the promissory note signed by Borrower and dated August 18,
2006    . The Note states that Borrower owes Lender
One Hundred Sixty One Thousand Two Hundred Sixty Nine  and 00/100

Dollars (U.S. $    161,269.00        ) plus interest.  Borrower has promised to pay this
debt in regular Periodic Payments and to pay the debt in full not later than
September 1, 2036              .

(F)    "Property" means the property that is described below under the heading "Transfer of
Rights in the Property."

(G)    "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges
and late charges due under the Note, and all sums due under this Security Instrument, plus
interest.

(H)    "Riders" means all Riders to this Security Instrument that are executed by Borrower.
The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider        ☐ Condominium Rider              ☐ Second Home Rider
☐ Balloon Rider                ☐ Biweekly Payment Rider         ☐ 1-4 Family Rider
☒ Other(s) [specify]           ☒ Planned Unit Development Rider
Timely Payment Rewards Rider

(I)    "Applicable Law" means all controlling applicable federal, state and local statutes,
regulations, ordinances and administrative rules and orders (that have the effect of law) as well
as all applicable final, non-appealable judicial opinions.

(J)    "Community Association Dues, Fees, and Assessments" means all dues, fees,
assessments and other charges that are imposed on Borrower or the Property by a condominium
association, homeowners association or similar organization.

(K)    "Electronic Funds Transfer" means any transfer of funds, other than a transaction
originated by check, draft, or similar paper instrument, which is initiated through an electronic
terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize
a financial institution to debit or credit an account.  Such term includes, but is not limited to,
point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone,
wire transfers, and automated clearinghouse transfers.

(L)    "Escrow Items" means those items that are described in Section 3.

(M)    "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or
proceeds paid by any third party (other than insurance proceeds paid under the coverages
described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or
other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv)
misrepresentations of, or omissions as to, the value and/or condition of the Property.

FLORIDA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT  Form 3010  1/01
GMACM - CMS.0008.FL (0001) (Page 2 of 18)                    Initials: _____

**(N)** **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O)** **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P)** **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q)** **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the

County

[Type of Recording Jurisdiction]

of Duval

[Name of Recording Jurisdiction]

Schedule "A" attached hereto and made a part hereof.

which currently has the address of
2533 Spring Pond Lane,

[Street]

Jacksonville                    , Florida  32221                    ("Property Address"):
[City]                                       [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

FLORIDA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT **Form 3010  1/01**
GMACM - CMS.0008.FL (0001) *(Page 3 of 18)*                    Initials: _____

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

LOAN NO: 597311208
FLORIDA -- Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3010  1/01
GMACM - CMS.0008.FL (0001) *(Page 4 of 18)*                    Initials:

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees and Assessments, if any, be escrowed by Borrower, and such dues, fees, and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

LOAN NO: 597311208
FLORIDA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3010  1/01
GMACM - CMS.0008.FL (0001) *(Page 5 of 18)*          Initials: _____

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts

FLORIDA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT  Form 3010  1/01
GMACM - CMS.0008.FL (0001) *(Page 6 of 18)*                          Initials: _____

(including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters,

or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in

FLORIDA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT  **Form 3410  1/01**
GMACM – CMS.0008.FL (0001) *(Page 8 of 18)*        Initials: _____

connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the

LOAN NO: 597311208
FLORIDA – Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3010 1/01
GMACM - CMS.0008.FL (0001) *(Page 9 of 18)*                Initials: _____

amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until the Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

FLORIDA -- Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT **Form 3010  1/01**
GMACM - CMS.0008.FL (0001) *(Page 10 of 18)*                    Initials:

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

LOAN NO: 597311208
FLORIDA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3010 1/01
GMACM - CMS.0008.FL (0001) *(Page 11 of 18)*                     Initials: _____

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

FLORIDA -- Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT  Form 3010  1/01
GMACM - CMS.0008.FL (0001) *(Page 12 of 18)*                    Initials: _____

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All Notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a

LOAN NO: 597311208
FLORIDA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT  Form 3010  1/01
GMACM - CMS.0008.FL (0001) *(Page 13 of 18)*       Initials: _____

prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

FLORIDA -- Single Family  Fannie Mae/Freddie Mac UNIFORM INSTRUMENT  **Form 3010  1/01**
GMACM - CMS.0008.FL (0001) *(Page 14 of 18)*                     Initials: _____

Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that

LOAN NO: 597311208
FLORIDA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT  Form 3010  1/01
GMACM - CMS.0008.FL (0001) *(Page 15 of 18)*                    Initials: _a_ _JW_

adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right assert in the foreclosure proceeding the nonexistence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

FLORIDA – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT  Form 3010  1/01
GMACM - CMS.0008.FL (0001) *(Page 16 of 18)*                    Initials: _____

**24. Attorneys' Fees.** As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

**25. Jury Trial Waiver.** The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
Jacob C Wilson                                 -Borrower
2533 Spring Pond Lane
Jacksonville, FL 32221

_____ (Seal)
Celita I Wilson                                 -Borrower
2533 Spring Pond Lane
Jacksonville, FL 32221

_____ (Seal)
                                               -Borrower

_____ (Seal)
                                               -Borrower

LOAN NO: ███████
Signed, sealed and delivered in the presence of:

Sheila Basham                    Melanie L. Johnson
Sheila Basham                    Melanie L. Johnson

FLORIDA - Single Family -- Fannie Mae/Freddie Mac UNIFORM INSTRUMENT  Form 3460  1/01
GMACM - CMS.0008.FL (0001) *(Page 17 of 18)*

## INDIVIDUAL ACKNOWLEDGMENT

**STATE OF FLORIDA**

**COUNTY OF** Duval }SS

The foregoing instrument was acknowledged before me this 18th day of August, 2006 , by Jacob C. Wilson and Celita I. Wilson

who is personally known to me or who has produced  FL DL

as identification and who did take an oath.

NOTARY PUBLIC

_Sheila Basham_

My Commission Expires:

SHEILA BASHAM
MY COMMISSION # DD554189
EXPIRES: May 21, 2010
(407) 398-0153    Florida Notary Service.com

FLORIDA ~ Single Family ~ Fannie Mae/Freddie Mac UNIFORM INSTRUMENT **Form 3410  1/01**
GMACM - CMS.0008.FL (0001) *(Page 18 of 18)*    Initials: _JW  JW_

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this      18th      day of August      , 2006     , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to

GMAC Mortgage Corporation

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

2533 Spring Pond Lane
Jacksonville, FL 32221
[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in

The Declarations and Covenants of the Planned Unit
Development known as Foxhill Farms
(the "Declaration"). The Property is a part of a planned unit development known as

Foxhill Farms
[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the: (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then:

LOAN NO: ▇▇▇▇▇▇▇

MULTISTATE PUD RIDER - Single Family -
Fannie Mae/Freddie Mac Uniform Instrument Form 3150 1/01
Page 1 of 3    358875836    Initials: _____  _____
GMACM - CRM.0044.PUD (0411)

(i)  Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and

(ii)  Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to:

(i)  the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain;

(ii)  any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender;

(iii)  termination of professional management and assumption of self-management of the Owners Association; or

(iv)  any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

LOAN NO: ███████

MULTISTATE PUD RIDER - Single Family - Fannie Mae/Freddie Mac Uniform Instrument Form 3150 1/01
GMACM - CRM.0044.PUD (0411)          Page 2 of 3                    Initials: _____

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

_____ (Seal)
Jacob C Wilson                                              -Borrower

_____ (Seal)
Celita I Wilson                                             -Borrower

_____ (Seal)
                                                           -Borrower

_____ (Seal)
                                                           -Borrower

LOAN NO: ████████
**MULTISTATE PUD RIDER** - Single Family - Fannie Mae/Freddie Mac Uniform Instrument Form 3150 1/01
GMACM - CRM.0044.PUD (0411)          Page 3 of 3

# TIMELY PAYMENT REWARDS RIDER

THIS TIMELY PAYMENT REWARDS RIDER is made this    18th    day of August, 2006    , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note to
GMAC Mortgage Corporation
("Lender") covering the Property described in the Security Instrument and located at:

2533 Spring Pond Lane
Jacksonville, FL 32221
[Property Address]

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.  TIMELY PAYMENT REWARDS RATE REDUCTION**
The Note provides for the reduction in Borrower's interest rate as follows:

**1. TIMELY PAYMENT REWARDS RATE REDUCTION**

Borrower has agreed to pay the rate of interest set forth in Section 2 of the Note (the "Note Rate") until the full amount of principal has been paid. However, if on any one of the second, third, or fourth anniversaries of the scheduled due date of the first full installment payment due under the Note (each, an "Anniversary Date") Borrower has demonstrated a Good Payment History, Lender agrees to decrease the Note Rate by   One
percentage point ( 1.000 %). Borrower will be deemed to have demonstrated a "Good Payment History" if Borrower: (a) has made each of the most recent 24 consecutive monthly payments under the Note and Security Instrument before the date the next payment was due; and (b) has never been late by 3 months or more in making any monthly payments due under the Note. If Borrower demonstrates a Good Payment History, the new Note Rate will take effect on the earliest Anniversary Date on which Borrower has demonstrated a Good Payment History ("Rate Reduction Date"). Beginning with Borrower's first monthly

LOAN NO: ██████████
MULTISTATE TIMELY PAYMENT REWARDS RIDER - Single Family -
Fannie Mae Uniform Instrument  Form 1412 4/01
Page 1 of 2  35887583?        Initials: ___
GMACM - CRM.1402 (TPR) (0411)

payment after the Rate Reduction Date, Borrower will pay the new amount as the monthly payment until the Maturity Date. Lender will decrease Borrower's Note Rate only one time during the term of the loan, provided Borrower demonstrates a Good Payment History on any one of the second, third, or fourth Anniversary Dates.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Timely Payment Rewards Rider.

_____ (Seal)
Jacob C Wilson                            -Borrower

_____ (Seal)
Celita I Wilson                           -Borrower

_____ (Seal)
                                          -Borrower

_____ (Seal)
                                          -Borrower

LOAN NO: ▮▮▮▮▮▮▮
MULTISTATE TIMELY PAYMENT REWARDS RIDER - Single Family -
Fannie Mae Uniform Instrument  Form 1412 4/01
GMACM - CRM.1402 (TPR) (0411)           Page 2 of 2

# COMPOSITE EXHIBIT C

When Recorded Return To:
Nationstar Mortgage LLC
C/O NTC 2100 Alt. 19 North
Palm Harbor, FL 34683



## ASSIGNMENT OF MORTGAGE

**FOR GOOD AND VALUABLE CONSIDERATION,** the sufficiency of which is hereby acknowledged, the undersigned, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR GMAC MORTGAGE CORPORATION, ITS SUCCESSORS AND ASSIGNS PO BOX 2026, FLINT, MI, 48501, (ASSIGNOR),** by these presents does convey, grant, assign, transfer and set over the described Mortgage with all interest secured thereby, all liens, and any rights due or to become due thereon to **NATIONSTAR MORTGAGE LLC, WHOSE ADDRESS IS 350 Highland Drive, Lewisville, TX 75067 (469)549-2000, A DELAWARE CORPORATION, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE).**

Said Mortgage was made by **JACOB C. WILSON AND CELITA I. WILSON** and recorded in Official Records of the Clerk of the Circuit Court of DUVAL County, Florida, in Book 13491, Page 2100, and/or Instrument # 2006305146, upon the property situated in said State and County as more fully described in said Mortgage.

Dated on 09 / 18 / 2012 (MM/DD/YYYY)
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR GMAC MORTGAGE CORPORATION, ITS SUCCESSORS AND ASSIGNS

By: *Brenda Higgins*
Brenda Higgins
ASST. SECRETARY

Witnesses:

*Jennifer Eskam*

*Trish Abele*

STATE OF NEBRASKA    COUNTY OF SCOTTS BLUFF
The foregoing instrument was acknowledged before me on 09 / 18 / 2012 (MM/DD/YYYY) by Brenda Higgins as ASST. SECRETARY of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR GMAC MORTGAGE CORPORATION, ITS SUCCESSORS AND ASSIGNS. He/she/they is (are) personally known to me.

*Deb Seibert*
Deb Seibert
Notary Public - State of NEBRASKA
Commission expires: 3/23/2015

GENERAL NOTARY - State of Nebraska
DEB SEIBERT
My Comm. Exp. March 23, 2015

Document Prepared By: E.Lance/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152
NSMAV 17596697 -- DOCADMIN CJ41673291X  MIN ████████████ MERS PHONE
1-888-679-6377  [C] FRMFL1

*17596697*

Recording Requested By:
Nationstar Mortgage

When Recorded Return To:

DOCUMENT ADMINISTRATION
Nationstar Mortgage
8950 CYPRESS WATERS BLVD
COPPELL, TX  75019

## CORPORATE ASSIGNMENT OF MORTGAGE

Duval, Florida
SELLER'S SERVICING #:          'WILSON'

Date of Assignment: January 20th, 2017
Assignor: NATIONSTAR MORTGAGE LLC at 8950 CYPRESS WATERS BLVD, COPPELL, TX 75019
Assignee: U.S. BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE
FOR NRZ PASS-THROUGH TRUST VIII at 60 LIVINGSTON AVE EP-MN-WS3D, ST. PAUL, MN 55107
Executed By: JACOB C. WILSON AND CELITA I. WILSON  To: MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC., AS NOMINEE FOR GMAC MORTGAGE CORPORATION
Date of Mortgage: 08/18/2006 Recorded: 08/31/2006 in Book/Reel/Liber: OR 13491 Page/Folio: 2100 as
Instrument No.: 2006305146 In the County of Duval, State of Florida.

Property Address: 2533 SPRING POND LANE, JACKSONVILLE, FL 32221

   KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of
which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said
Mortgage having an original principal sum of $161,269.00 with interest, secured thereby, and the full benefit of all the
powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys
unto the said Assignee, the Assignor's interest under the Mortgage.

   TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the
terms contained in said Mortgage.

NATIONSTAR MORTGAGE LLC
On January 20th, 2017

By:
MOHAMED HAMEED, Assistant
Secretary

STATE OF Texas
COUNTY OF Dallas

On January 20th, 2017, before me, TIM JACKSON, a Notary Public in and for Dallas in the State of Texas,
personally appeared MOHAMED HAMEED, Assistant Secretary, personally known to me to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal,

TIM JACKSON
Notary Expires: 12/03/2019 #130457575

```
TIM JACKSON
Notary Public, State of Texas
Comm. Expires 12-03-2019
Notary ID 13045757-5
```

(This area for notarial seal)

Prepared By:
Bernardo Hernandez, Nationstar Mortgage 8950 CYPRESS WATERS BLVD, COPPELL, TX 75019 1-888-480-2432

*FP*FPNATT*01/20/2017 09:54:53 AM* NATT01NATTA000000000000000844037* FLDUVAL* '          STATE_MORT_ASSIGN_ASSN **BHENATT*

When Recorded Return To:
Nationstar Mortgage LLC
C/O Nationwide Title Clearing, Inc.
2100 Alt. 19 North
Palm Harbor, FL 34683



## ASSIGNMENT OF MORTGAGE

**FOR GOOD AND VALUABLE CONSIDERATION,** the sufficiency of which is hereby acknowledged, the undersigned, **U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE FOR NRZ PASS-THROUGH TRUST VIII, WHOSE ADDRESS IS C/O NATIONSTAR MORTGAGE LLC, 8950 CYPRESS WATERS BLVD., COPPELL, TX 75019, (ASSIGNOR),** by these presents does convey, grant, assign, transfer and set over the described Mortgage with all interest secured thereby, all liens, and any rights due or to become due thereon to **U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR IGLOO SERIES III TRUST, WHOSE ADDRESS IS C/O BSI FINANCIAL SERVICES, 7114 E. STETSON DR., STE. 250, SCOTTSDALE, AZ 85251, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).**

Said Mortgage was made by **JACOB C. WILSON AND CELITA I. WILSON** and recorded in Official Records of the Clerk of the Circuit Court of **DUVAL** County, **Florida**, in **Book 13491, Page 2100 and Doc # 2006305146**, upon the property situated in said State and County as more fully described in said Mortgage.

**Dated this 22nd day of September in the year 2017**
**U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE FOR NRZ PASS-THROUGH TRUST VIII, by NATIONSTAR MORTGAGE LLC, its Attorney-in-Fact**

**KRISTOPHER SANDBERG**
**Vice President of Loan Documentation**

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

**JENNIFER MOYLAN**
WITNESS

**DANIEL THOMPSON**
WITNESS

**Document Prepared By: E.Lance/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152**
NSBTA 400099664 NRZ/BSI IGLOO B    DOCR T201709-04:46:07 [C-1]  EFRMFL1

*D0025937931*

STATE OF FLORIDA
COUNTY OF PINELLAS

The foregoing instrument was acknowledged before me on this 22nd day of September in the year 2017, by Kristopher Sandberg as Vice President of Loan Documentation of NATIONSTAR MORTGAGE LLC as Attorney-in-Fact for U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE FOR NRZ PASS-THROUGH TRUST VIII, who, as such Vice President of Loan Documentation being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

NICOLE SHIELDS
COMM EXPIRES: 08/05/2020

NICOLE SHIELDS
Notary Public – State of Florida
My Comm. Expires August 5, 2020
Commission # GG126925

**Document Prepared By: E.Lance/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152**

NSBTA 400099664  NRZ/BSI IGLOO B    DOCR T201709-04:46:07 [C-1]  EFRMFL1

*D0025937931*

**WILSON JACOB C** 
2533 SPRING POND LN
JACKSONVILLE, FL 32221
**WILSON CELITA L**

**Primary Site Address**
2533 SPRING POND LN
Jacksonville FL 32221

**Official Record Book/Page**
18557-01869

Tile #
5506

# EXHIBIT D

**2533 SPRING POND LN**
Property Detail

| RE # | 012874-0580 |
|---|---|
| Tax District | GS |
| Property Use | 0100 Single Family |
| # of Buildings | 1 |
| Legal Desc. | For full legal description see Land & Legal section below |
| Subdivision | 06487 FOX HILL FARMS UNIT 1 |
| Total Area | 11644 |

The sale of this property may result in higher property taxes. For more information go to Save Our Homes and our Property Tax Estimator . 'In Progress' property values, exemptions and other supporting information on this page are part of the working tax roll and are subject to change. Certified values listed in the Value Summary are those certified in October, but may include any official changes made after certification Learn how the Property Appraiser's Office values property.

### Value Summary

| Value Description | 2019 Certified | 2020 In Progress |
|---|---|---|
| Value Method | CAMA | CAMA |
| Total Building Value | $123,413.00 | $122,015.00 |
| Extra Feature Value | $0.00 | $0.00 |
| Land Value (Market) | $30,000.00 | $30,000.00 |
| Land Value (Agric.) | $0.00 | $0.00 |
| Just (Market) Value | $153,413.00 | $152,015.00 |
| Assessed Value | $97,899.00 | $97,899.00 |
| Cap Diff/Portability Amt | $55,514.00 / $0.00 | $54,116.00 / $0.00 |
| Exemptions | $50,000.00 | See below |
| Taxable Value | $47,899.00 | See below |

## Taxable Values and Exemptions – In Progress 
**If there are no exemptions applicable to a taxing authority, the Taxable Value is the same as the Assessed Value listed above in the Value Summary box.**

| County/Municipal Taxable Value | |
|---|---|
| Assessed Value | $97,899.00 |
| Homestead (HX) | - $25,000.00 |
| Homestead Banding 196.031(1)(b) (HB) | - $25,000.00 |
| **Taxable Value** | **$47,899.00** |

| SJRWMD/FIND Taxable Value | |
|---|---|
| Assessed Value | $97,899.00 |
| Homestead (HX) | - $25,000.00 |
| Homestead Banding 196.031(1)(b) (HB) | - $25,000.00 |
| **Taxable Value** | **$47,899.00** |

| School Taxable Value | |
|---|---|
| Assessed Value | $97,899.00 |
| Homestead (HX) | - $25,000.00 |
| **Taxable Value** | **$72,899.00** |

## Sales History 

| Book/Page | Sale Date | Sale Price | Deed Instrument Type Code | Qualified/Unqualified | Vacant/Improved |
|---|---|---|---|---|---|
| 18557-01869 | 10/2/2018 | $100.00 | MS - Miscellaneous | Unqualified | Improved |
| 16999-00147 | 12/8/2014 | $100.00 | MS - Miscellaneous | Unqualified | Improved |
| 13491-02099 | 8/18/2006 | $201,600.00 | SW - Special Warranty | Qualified | Improved |
| 00061-00028 | 3/23/2006 | $100.00 | PB - Plat Book | Unqualified | Vacant |

## Extra Features 
No data found for this section

## Land & Legal
Land

| LN | Code | Use Description | Zoning | Front | Depth | Category | Land Units | Land Type | Land Value |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 0190 | RES POND LD 3-7 UNITS PER AC | PUD | 0.00 | 0.00 | Common | 1.00 | Lot | $30,000.00 |

Legal

| LN | Legal Description |
|---|---|
| 1 | 61-28 06-3S-25E .27 |
| 2 | FOX HILL FARMS UNIT 1 |
| 3 | LOT 120 |

## Buildings
Building 1
Building 1 Site Address
2533 SPRING POND LN Unit
Jacksonville FL 32221

| Building Type | 0101 - SFR 1 STORY |
|---|---|
| Year Built | 2006 |
| Building Value | $122,015.00 |

| Type | Gross Area | Heated Area | Effective Area |
|---|---|---|---|
| Base Area | 1844 | 1844 | 1844 |
| Finished Garage | 413 | 0 | 206 |
| Finished Open Porch | 40 | 0 | 12 |
| Total | 2297 | 1844 | 2062 |

| Element | Code | Detail |
|---|---|---|
| Exterior Wall | 6 | 6 Vertical Sheet |
| Exterior Wall | 20 | 20 Face Brick |
| Roof Struct | 3 | 3 Gable or Hip |
| Roofing Cover | 3 | 3 Asph/Comp Shng |
| Interior Wall | 5 | 5 Drywall |
| Int Flooring | 14 | 14 Carpet |
| Int Flooring | 11 | 11 Cer Clay Tile |
| Heating Fuel | 4 | 4 Electric |
| Heating Type | 4 | 4 Forced-Ducted |
| Air Cond | 3 | 3 Central |

| Element | Code | Detail |
|---|---|---|
| Baths | 2.000 | |
| Bedrooms | 4.000 | |



| Stories | 1.000 | |
|---|---|---|
| Rooms / Units | 1.000 | |

## 2019 Notice of Proposed Property Taxes Notice (TRIM Notice)

| Taxing District | Assessed Value | Exemptions | Taxable Value | Last Year | Proposed | Rolled-back |
|---|---|---|---|---|---|---|
| Gen Govt Ex B&B | $97,899.00 | $50,000.00 | $47,899.00 | $527.17 | $548.06 | $517.83 |
| Public Schools: By State Law | $97,899.00 | $25,000.00 | $72,899.00 | $287.49 | $284.45 | $276.72 |
| By Local Board | $97,899.00 | $25,000.00 | $72,899.00 | $159.77 | $163.88 | $153.79 |
| FL Inland Navigation Dist. | $97,899.00 | $50,000.00 | $47,899.00 | $1.47 | $1.53 | $1.46 |
| Water Mgmt Dist. SJRWMD | $97,899.00 | $50,000.00 | $47,899.00 | $11.80 | $11.56 | $11.56 |
| Gen Gov Voted | $97,899.00 | $50,000.00 | $47,899.00 | $0.00 | $0.00 | $0.00 |
| School Board Voted | $97,899.00 | $25,000.00 | $72,899.00 | $0.00 | $0.00 | $0.00 |
| | | | Totals | $987.70 | $1,009.48 | $961.36 |

| Description | Just Value | Assessed Value | Exemptions | Taxable Value |
|---|---|---|---|---|
| Last Year | $141,490.00 | $96,074.00 | $50,000.00 | $46,074.00 |
| Current Year | $153,413.00 | $97,899.00 | $50,000.00 | $47,899.00 |

## 2019 TRIM Property Record Card (PRC)

This PRC reflects property details and values at the time of the original mailing of the Notices of Proposed Property Taxes (TRIM Notices) in August.

## Property Record Card (PRC)

The PRC accessed below reflects property details and values at the time of Tax Roll Certification in October of the year listed.

### 2019

### 2018

### 2017

### 2016

### 2015

### 2014

• To obtain a historic Property Record Card (PRC) from the Property Appraiser's Office, submit your request here: 

## More Information

ontact Us | Parcel Tax Record | GIS Map | Map this property on Google Maps | City Fees Record

# EXHIBIT E

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

*In re:*

CASE NO. 3:19-bk-04421-JAF
CHAPTER 7

JACOB CARL WILSON,

Debtor.

_____/

## AFFIDAVIT AS TO INDEBTEDNESS

STATE OF _California_

COUNTY OF _Orange_

**BEFORE ME** an officer authorized to take oaths this day personally appeared _Raymond Valderrama_ of Servis One, Inc. dba BSI Financial Services ("Servicer"), who, being first duly sworn, deposes and says:

1.      I am authorized to sign this affidavit on behalf of Movant, U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE IGLOO SERIES III TRUST ("Movant").

2.      I am a _AVP BK_ of the Servicer, which is Movant's servicing agent for the subject loan ("the Loan").

3.      Servicer maintains records for the Loan. As part of my job responsibilities for the Movant, I am familiar with the type of records maintained by the Servicer in connection with the Loan.

4.      The information in this affidavit is taken from the Servicer's business records. I have personal knowledge of the Servicer's procedures for creating these records. They are: (a) made at or near the time of the occurrence of the matters recorded by persons with personal

knowledge of the information in the business record, or from information transmitted by persons with personal knowledge; (b) the records are kept in the course of the Servicer's regularly conducted business activities; and (c) it is the regular practice of the Servicer to make such records.

5.      The Servicer services the Loan encumbering the Debtor(s); property.

7.      The information contained in the Motion for Relief ("Motion") is derived from the Servicer's business records and all the Loan documents attached to the Motion as exhibits are true and accurate copies of the original documents.

8.      The business records, which I have reviewed, show that there has been a default under the Loan, as the payment contractually due for February 1, 2017 and all subsequent payments have not been made.

9.      The default has not been cured, and there are presently due and owing to the Servicer the following sums of money.

| NAME | AMOUNT |
|---|---|
| Unpaid Principal Balance | $123,750.19 |
| Interest | $17,074.81 |
| Escrow | $11,318.51 |
| Fees Assessed | $7,921.03 |
| Deferred Amounts | $32,652.85 |
| Unapplied Funds | ($515.29) |
| Grand Total | $192,202.10 |

The amount due and owing to Servicer is subject to change.

10.     I certify that the foregoing is true and correct based upon my personal knowledge.

11.     Servicer has retained Howard Law Group to prosecute the Motion and is obligated

to pay a reasonable fee and reimburse costs incurred in connection with the firm's services.

**FURTHER AFFIANT SAYETH NAUGHT.**

_____
Affiant

**SWORN TO** and subscribed before me this _____ day of _____ 2019, by

_____               (Name),          as          an

_____ (Title) of the Secured Creditor.   He/she [ ] is personally

known to me or [ ] produced _____ as identification.


_____
NOTARY PUBLIC
My Commission expires:
(Notary Seal)

# ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of _____Orange_____ )

On __12/12/19_____ before me, __Hauoli M. Smith-Lopez_____
(insert name and title of the officer)

personally appeared __Raymond Valderrama_____,
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

HAUOLI M. SMITH-LOPEZ
COMM. # 2165455
NOTARY PUBLIC • CALIFORNIA
ORANGE COUNTY
Comm. Exp. SEPT. 23, 2020

Signature _____ (Seal)